UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

|  |  |
|---|---|
| ABBY GAYDOS, | |
| Plaintiff, | |
| | Case No. 24-cv-11781 |
| v. | |
| | Honorable Robert J. White |
| WOODWARD ORIGINAL, LLC, | |
| Defendant. | |

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO PARTIALLY DISMISS THE COMPLAINT**

I.   <u>Introduction</u>

Abby Gaydos commenced this race and gender employment discrimination action under Title VII of the Civil Rights Act of 1964 and the Civil Rights Act of 1866, 42 U.S.C. § 1981.  The complaint alleges that a co-worker made disparaging comments about Gaydos's race and sexual orientation over the course of a single day.  Gaydos maintains that Woodward demoted her and declined to rehire her for future projects after she reported the harassment to the company's management.

Before the Court is Woodward's motion to partially dismiss the complaint. (ECF No. 10).  Gaydos responded in opposition. (ECF No. 12).  Woodward filed a reply. (ECF No. 13).  The Court will decide the motion without a hearing pursuant

to E.D. Mich. LR 7.1(f)(2).  For the following reasons, the motion is granted in part and denied in part.

II.    <u>Background</u>

    *A.    Factual History*

Gaydos is a 43-year-old female who is both Asian and a lesbian. (ECF No. 1, PageID.2, ¶ 5).  Woodward initially hired her as a talent production assistant and subsequently promoted her to second assistant director on a film project for the "Pure Michigan" advertising campaign. (*Id.*, PageID.7, ¶¶ 28-30).  The promotion included a daily pay raise of $50. (*Id.*, ¶ 30).

Gaydos alleges that the project's assistant director, Greg Braugitan, harassed her on two separate occasions on September 23, 2022. (*Id.*, ¶ 31).  The first incident occurred when Braugitan "made homophobic remarks by shoving a graphic picture of Betty Paige in [Gaydos's face] while flicking his tongue, hollering 'this is what you like and want' and stated that [Gaydos] was 'an abomination.'" (*Id.*).  The second incident occurred later that same day, in front of three co-workers, when Braugitan called her a "chink" and "yellow," and "mocked her with a fake, highly offensive stereotype of an Asian accent, saying 'ching ching chong chong.'" (*Id.*, PageID.7-8, ¶ 33).  Gaydos claims that Braugitan quit the film set later that night. (*Id.*, PageID.8, ¶ 36).

Gaydos reported Braugitan's comments to line producer Marissa Clements the following day. (*Id.*, ¶ 37). She alleges that Clements was "dismissive" of her complaints and "brush[ed]" her "off." (*Id.*, ¶ 38). The next day – September 25 – Clements informed Gaydos that Woodward would be demoting her to a production assistant on the film shoot, which carried a daily pay cut of $100. (*Id.*, PageID.9, ¶ 39). Clements explained that Woodward had decided to replace both Gaydos and Braugitan after he had quit. (*Id.*).

After Gaydos threatened legal action, Clements arranged an in-person meeting with Jonathan Braue, one of Woodward's owners. (*Id.*, PageID.10, ¶ 45). According to Gaydos, their conversation was unproductive. Braue responded to her complaints by suggesting that "maybe you don't want to sideswipe [Braugitan], maybe was having a bad day." But he assured Gaydos that Woodward would "make sure that Marissa [Clements] sticks with you" on prospective film shoots. (*Id.*, PageID.10-11, ¶ 48).

Those projects never materialized. In late fall 2022, Mindy Silberman, Woodward's production manager, told Gaydos that the company "would no longer be hiring her." (*Id.*, PageID.12, ¶ 54). She "never heard from Silberman or

3

[Woodward] again." (*Id.*).  Nor was Gaydos able to "secure work" with other film production companies in the Detroit metropolitan area.[1] (*Id.*, ¶ 57).

### B.    *Procedural History*

Gaydos filed a charge with the Equal Employment Opportunity Commission ("EEOC") on July 18, 2023. (ECF No. 10-1, PageID.75-76; ECF No. 1. PageID.6, ¶ 23).  The EEOC issued her a right-to-sue letter on April 10, 2024. (ECF No. 1-1, PageID.26).  Gaydos timely instituted this lawsuit on July 9, 2024. (ECF No. 1). The complaint alleges causes of action for Title VII discrimination and hostile work environment based upon Gaydos's race and sexual orientation (Counts I and V), Title VII retaliation (Counts II and VI), and racial discrimination, hostile work environment, and retaliation under 42 U.S.C. § 1981 (Counts III and IV).

Woodward now moves to dismiss all the claims except for the Title VII and section 1981 retaliation claims insofar as they allege that Woodward unlawfully demoted Gaydos. (ECF No. 10, PageID.55-56; *see also* ECF No. 12, PageID.85).

### III.   <u>Legal Standards</u>

When reviewing a motion to dismiss the complaint for failing to state a claim, the Court must "construe the complaint in the light most favorable to the plaintiff and accept all factual allegations as true." *Daunt v. Benson*, 999 F.3d 299, 308 (6th

---

[1] As postscript, Gaydos alleges that two of Woodward's hiring coordinators saw her at a local restaurant in April 2023. (ECF No. 1, PageID.13, ¶ 58).  They threatened her that "you'll never work in this city again, bitch." (*Id.*).

Cir. 2021) (cleaned up); *see also* Fed. R. Civ. P. 12(b)(6).  "The factual allegations in the complaint need to be sufficient to give notice to the defendant as to what claims are alleged, and the plaintiff must plead sufficient factual matter to render the legal claim plausible." *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010) (quotation omitted).  The Court may consider "exhibits attached to the complaint" to decide the motion. *Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2001).

IV.  <u>Analysis</u>

    A.    *Title VII and Section 1981 Hostile Work Environment Claims (Counts I, III, and V)*

Title VII prohibits employment discrimination "against any individual . . . because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. 2000e-2(a)(1).  This proscription "includes requiring people to work in a discriminatorily hostile or abusive environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993); *see also Chaney v. Haworth, Inc.*, 802 F. App'x 1006, 1010 (6th Cir. 2020).  "[D]iscriminatory conduct" that is "so severe or pervasive that it create[s] a work environment abusive to employees because of their race [or] gender . . . offends Title VII's broad rule of workplace equality." *Harris*, 510 U.S. at 22. These same principles apply to hostile work environments that discriminate against an employee's sexual orientation. *See Bostock v. Clayton Cnty.*, 590 U.S. 644, 662

(2020); *see also Kilpatrick v. HCA Hum. Res., LLC*, No. 22-5307, 2023 U.S. App. LEXIS 3625, at \*5, 9-12 (6th Cir. Feb. 13, 2023).[2]

The standard for employer liability in a Title VII hostile work environment claim depends upon whether the harassing employee is a supervisor or coworker. *Doe v. City of Detroit*, 3 F.4th 294, 301 (6th Cir. 2021). "In the case of a harassing supervisor, the employer is vicariously liable for the hostile work environment." *Id*. An employer is liable for co-worker harassment only where it "knew or should have known about the harassment and failed to act." *Williams v. CSX Transp. Co.*, 643 F.3d 502, 511 (6th Cir. 2011).

Title VII plaintiffs are not required to make a prima facie showing under the *McDonnell Douglas* standard to survive Rule 12(b)(6) dismissal. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511-512 (2002); *see also Keys v. Humana, Inc.*, 684 F.3d 605, 609-10 (6th Cir. 2012). This is because "the prima facie case under *McDonnell Douglas* is an evidentiary standard, not a pleading requirement." *Keys*, 684 F.3d at

---

[2] Section 1981 racially hostile work environment claims employ the same standards as Title VII hostile work environment claims. *See Williams v. CSX Transp. Co.*, 643 F.3d 502, 511 n.4 (6th Cir. 2011). Section 1981 does not cover hostile work environment claims predicated upon the plaintiff's gender or sexual orientation. *See, e.g., Carvalho-Grevious v. Del. State Univ.*, 851 F.3d 249, 257 (3d Cir. 2017) (stating that gender-based discrimination claims are not cognizable under section 1981); *Ayissi-Etoh v. Fannie Mae*, 712 F.3d 572, 576 n.1 (D.C. Cir. 2013) (same); *Anderson v. Conboy*, 156 F.3d 167, 170 (2d Cir. 1998) ("It is also settled that Section 1981 does not prohibit discrimination on the basis of gender . . ."); *Green v. GMC*, 95 F. Supp. 2d 698, 702 (W.D. Mich. 2000) (same).

609; *see also Swierkiewicz*, 534 U.S. at 510.  A plaintiff need only "allege sufficient factual content from which a court, informed by its judicial experience and common sense, could draw the reasonable inference that an employer violated Title VII." *Bar v. Kalitta Charters II, LLC*, No. 21-1739, 2022 U.S. App. LEXIS 21412, at *8 (6th Cir. Aug. 2, 2022) (quotation omitted); *see also Keys*, 684 F.3d at 610.

Placing aside whether the alleged harassment was "severe or pervasive" enough to "create an abusive working environment," the complaint fails to plausibly show that Woodward should be held responsible for Braugitan's harassing conduct. Gaydos does not contend that Braugitan acted as her supervisor.  And the complaint contains no plausible allegations that Woodward "knew or should have known" about the two instances of harassment yet failed to implement prompt and appropriate remedial measures.  Gaydos instead asserts that Braugitan "quit working on the [film] shoot the night of the incident", *i.e.*, the evening of September 23, and that she only first reported the harassment to her line producer, Marissa Clements, "[t]he following day." (ECF No. 1, PageID.8, ¶¶ 36-37).

Viewing the complaint in Gaydos's favor, there is still no plausible basis to vicariously ascribe Braugitan's harassing conduct to Woodward for the purpose of imposing Title VII or section 1981 hostile work environment liability.

B.    *Title VII and Section 1981 Discrimination Claims (Counts I, III, and V)*

Insofar as Gaydos attempts to state plausible Title VII and section 1981 discrimination claims she falls short of her goal.[3]  The complaint does not allege that (1) she suffered an "adverse employment action" that was (2) "motivated by discriminatory animus." *Ogbonna-McGruder v. Austin Peay State Univ.*, 91 F.4th 833, 843 (6th Cir. 2024).

Gaydos surmounts the first hurdle with relative ease.  She claims that Woodward "was planning to hire back most of the crew members for the second leg of the 'Pure Michigan' campaign, except [her]" and that it "did in fact fail and refuse to hire" her "back for the second portion" of the "campaign." (ECF No. 1, PageID.9, 11, ¶¶ 42, 49).  Because Woodward's purported refusal to rehire Gaydos constitutes an "adverse employment action" this element is satisfied. *See Kirilenko-Ison v. Bd. of Educ. of Danville Indep. Schs.*, 974 F.3d 652, 664 (6th Cir. 2020) ("Bauder-Smith has shown that Defendant took an adverse action against her by failing to rehire her when she applied for a full-time nursing position in November 2017."); *Weigel v. Baptist Hosp. of E. Tenn.,* 302 F.3d 367, 379, 381 (6th Cir. 2002) (stating that the employer's failure to rehire the plaintiff is an adverse employment action).

---

[3] Section 1981 racial discrimination claims employ the same standards as Title VII discrimination claims. *See Tennial v. UPS*, 840 F.3d 292, 302 (6th Cir. 2016).

Woodward's motivation presents a more challenging question.  Gaydos points to no allegations that directly link Woodward's failure to rehire her for the next installment of the "Pure Michigan" campaign to her race or sexual orientation.  There is no indication from the complaint that Woodward hired a similarly qualified non-Asian, heterosexual to replace her as second assistant director on the subsequent shoot.  And Gaydos herself casts Woodward's refusal to rehire her as a form of retaliation for her harassment complaints as opposed to a discriminatory act motivated by Woodward's hostility towards her race and sexual orientation. (ECF No. 1, PageID.9, ¶ 42) (stating that Woodward exhibited "retaliatory animus" in its failure to rehire).

Since none of these allegations amount to a plausible claim of discrimination under Title VII or section 1981 those causes of action must be dismissed. *See Ogbonna-McGruder*, 91 F.4th at 843 (holding that the plaintiff did not state a Title VII discrimination claim where she failed to plausibly show that adverse employment decisions "were racially motivated."); *see also Keys*, 684 F.3d at 610 (deciding that the amended complaint plausibly established a Title VII discrimination claim where it alleged, among other things, that the employer engaged in a pattern or practice of discrimination against African American managers and professional staff; that the employer treated the plaintiff differently than her Caucasian counterparts; and that the plaintiff and other African Americans

"received specific adverse employment actions notwithstanding satisfactory employment performances.").

C.   *Title VII and Section 1981 Retaliation (Counts II, IV, and VI)*

Next, Gaydos maintains that Woodward demoted her and refused to rehire her for future projects because she complained about Braugitan's harassment.

A successful retaliation claim under both Title VII and section 1981 requires plausible allegations that (1) the employee engaged in protected activity, (2) her exercise of that activity was known to her employer, (3) the employer thereafter took an action that was materially adverse to her, and (4) there is a causal connection between the protected activity and the materially adverse action.[4] *Boxill v. O'Grady*, 935 F.3d 510, 520 (6th Cir. 2019).  The complaint meets this threshold.

*Protected Activity*. 42 U.S.C. § 2000e-3(a) defines "protected activity" as "oppos[ing] any practice made an unlawful employment practice by this title . . ." The term "oppose" means "to resist or antagonize . . . to contend against; to confront; resist; withstand." *Crawford v. Metro. Gov't. of Nashville & Davidson Cnty., Tenn.*, 555 U.S. 271, 276 (2009); *see also Jackson v. Genesee County Rd. Comm'n*, 999 F.3d 333, 344 (6th Cir. 2021).  Protected activity includes "complaining to anyone" – including "management and "other employees" – "about allegedly unlawful

---

[4] "The elements of a retaliation claim under § 1981 are the same as those under Title VII." *Boxill*, 935 F.3d at 520.

practices." *Jackson*, 999 F.3d at 344-45; *see also Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 579 (6th Cir. 2000).  The opposition must be based upon "a reasonable and good faith belief that the opposed practices were unlawful." *Jackson*, 999 F.3d at 345 (quotation omitted).  That means a plausible violation of Title VII's retaliation provision may occur regardless whether "the challenged practice ultimately is found to be unlawful." *Johnson*, 215 F.3d at 579-80.

Gaydos plausibly demonstrated that she engaged in a protected activity when she complained about Braugitan's harassment to Clements and Braue. (ECF No. 1, PageID.8, ¶¶ 37-38).

*Knowledge*. Gaydos's allegations that Woodward demoted her "only one day after" she "made her complaint of discrimination and hostile work environment to Clements"; that Clements was the one who informed her of the demotion; and that Clements explained the demotion as a response to Braugitan's decision to quit, together raise a plausible inference that Woodward knew about Gaydos's complaint to Clements. (ECF No. 1, PageID.9, ¶ 39).

What is more, Gaydos asserts that she attended an in-person meeting with one of Woodward's owners, Braue, where she discussed her "complaints about discrimination, harassment, and the hostile work environment she was subjected to by Braugitan . . ." (*Id.*, PageID.10, ¶ 48).  These allegations are more than adequate to plausibly establish that Woodward knew about Gaydos's protected activity.

11

*Adverse Employment Actions*. Woodward took adverse employment actions against Gaydos when it allegedly (1) demoted her from a second assistant director to a production assistant – resulting in decreased compensation of "$100.00 less per day", and (2) declined to rehire her for future projects. (*Id.*, PageID.9, 11, ¶¶ 39, 42, 49). *See Kirilenko-Ison*, 974 F.3d at 664 (stating that a failure to rehire an employee is an adverse employment action); *Weigel,* 302 F.3d at 381 (same); *see also Kuhn v. Washtenaw County*, 709 F.3d 612, 625 (6th Cir. 2013) (stating that adverse actions include "a demotion evidenced by a decrease in wage or salary" or "a less distinguished title").

*Causation*. Title VII claimants must show that the protected activity is a "but-for cause" of the employer's adverse action. *Univ. of Tex. Southwestern Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013); *see also EEOC v. New Breed Logistics*, 783 F.3d 1057, 1070 (6th Cir. 2015).  Gaydos's allegations plausibly establish the requisite causal connection between her complaints, her demotion, and Woodward's refusal to rehire her.

The complaint asserts that Woodward demoted her the day after she complained to Clements about Braugitan's harassment. (ECF No. 1, PageID.9, ¶ 39). *See Goodsite v. Norfolk Southern Ry.*, 573 F. App'x 572, 584 (6th Cir. 2014) (holding that the plaintiff "raised an inference of causation given the temporal proximity between her protected activity on June 7 and June 10, 2010, and her removal from

service on June 11, and her termination in August."); *see also Taylor v. Geithner*, 703 F.3d 328, 339 (6th Cir. 2013) (holding that "if there is a very close temporal proximity, then no other evidence is needed").

Gaydos also met in-person with Braue in October 2022 to address her complaints. (ECF No. 1, PageID.10-11, ¶¶ 46-48).  Braue observed that Gaydos might not "want to sideswipe" Braugitan and proposed that Braugitan might have been "having a bad day" when the harassment occurred.  Braue's attempt to dissuade Gaydos from pursuing her accusations raises, at a minimum, a plausible inference that he viewed Gaydos's complaints with disfavor.

Then consider Gaydos's conversation with Silberman, Woodward's production manager. (*Id.*, PageID.12, ¶ 54).  Gaydos relates how Silberman – who had initially hired Gaydos – informed her that Woodward would "no longer be hiring her," even though "Silberman had hired [her] repeatedly and consistently for projects." (*Id.*).  And after their exchange, Gaydos never heard from Silberman or Woodward again. (*Id.*).

Because the demotion and Woodward's refusal to rehire Gaydos followed on the heels of her complaint to Clements and her meeting with Braue, and since there are sufficient allegations showing that Braue attempted to discourage Gaydos from persisting with her accusations, the complaint plausibly demonstrates a "but-for" causal link between Gaydos's protected activity and Woodward's adverse

employment actions.  As a result, the Title VII and section 1981 retaliation claims are plausible enough to withstand Rule 12(b)(6) dismissal.

   D. *Exhaustion of the Title VII Retaliation Claims Based Upon Woodward's Failure to Rehire Gaydos*

   Lastly, insomuch as the Title VII retaliation claims are predicated upon its refusal to rehire Gaydos for future film projects, Woodward argues that Gaydos failed to exhaust this aspect of her claims.[5]

   Employees alleging retaliation in violation of Title VII must initially file an EEOC administrative charge within a certain timeframe after the alleged wrongful conduct occurred. *See* 42 U.S.C. § 2000e-5(e)(1).  Title VII plaintiffs cannot assert claims in a lawsuit that are omitted from the EEOC charge. *See* 42 U.S.C. § 2000e-5(f)(1); *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 47 (1974); *see also Kuhn v. Washtenaw County*, 709 F.3d 612, 627 (6th Cir. 2013).  The charge must be "sufficiently precise to identify the parties, and to describe generally the action or practices complained of." 29 C.F.R. § 1601.12(b).  This rule serves two functions: (1) provide notice to the employer about the conduct underlying the employee's charge; and (2) afford "the EEOC and the employer an opportunity to settle the dispute through conference, conciliation, and persuasion." *Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 361 (6th Cir. 2010); *see also Alexander*, 415 U.S. at 44.

---

[5] Section 1981 claims do "not require the exhaustion of administrative remedies." *Williams*, 643 F.3d at 510 n.3.

Title VII plaintiffs may "bring suit on an uncharged claim if it was reasonably within the scope of the charge filed." *Johnson v. Cleveland City Sch. Dist.*, 344 F. App'x 104, 109 (6th Cir. 2009); *see also Davis v. Sodexho, Cumberland Coll. Cafeteria*, 157 F.3d 460, 463 (6th Cir. 1998).  The failure to exhaust Title VII administrative remedies is "an affirmative defense that defendants bear the burden of pleading and proving." *Moore v. Coca-Cola Bottling Co. Consol.*, 113 F.4th 608, 622 (6th Cir. 2024) (cleaned up); *see also Lockett v. Potter*, 259 F. App'x 784, 786 (6th Cir. 2008).

Here, the parties dispute the scope of Gaydos's EEOC charge.  On the one hand, Gaydos proffers a copy of the declaration she allegedly submitted to the EEOC in support of the charge, which specifically asserts that Woodward declined to rehire her for subsequent projects.[6] (ECF No. 12-2, PageID.103-04).  On the declaration's second page (which also includes Gaydos's signature "under penalty of perjury") she says that:

> Even more shockingly, upon information and belief, I discovered toward the end of September 2022 that Respondent was planning to hire back most of the crew members for the second leg of the show [*sic*], **except for me**.

---

[6] The Court may consider Gaydos's declaration since she included it with her EEOC charge and the charge is central to her Title VII claims. *See Amini*, 259 F.3d at 503 ("there is no question that the EEOC charge, the filing of which was a precondition to Amini bringing this suit, is central to his discrimination claim."); *see also Ayers v. Enviro-Clean Servs.*, No. 20-1628, 2021 U.S. App. LEXIS 13052, at *6 (6th Cir. Apr. 30, 2021) (same).

> I inquired with Clements as to whether I was being hired back
> and Clements just said, "we'll let you know."

(*Id.*, PageID.104, ¶ 14) (emphasis in original).

But Woodward counters with its own evidence – an email exchange with the EEOC investigator assigned to Gaydos's file – indicating that the agency might have received only the declaration's first page, which contains no allegations about Woodward's failure to rehire Gaydos. (ECF No. 13-2, PageID.123).

Because this skirmish over the EEOC charge's breadth raises factual questions that are inappropriate to resolve at the motion to dismiss stage, the Court will permit the failure-to-rehire portion of the Title VII retaliation claims to proceed. Woodward may renew its challenge to the charge's scope in a properly supported summary judgment motion once discovery on this issue is concluded. Accordingly,

IT IS ORDERED that Woodward's motion to partially dismiss the complaint (ECF No. 10) is granted in part and denied in part.

IT IS FURTHER ORDERED that the portion of the motion seeking to dismiss the Title VII and section 1981 hostile work environment and discrimination claims (Counts I, III and V) is granted.

16

IT IS FURTHER ORDERED that the portion of the motion seeking to dismiss

the Title VII and section 1981 retaliation claims (Counts II, IV, and VI) is denied.


Dated: August 26, 2025                    s/ Robert J. White                    
                                          Robert J. White
                                          United States District Judge

17